**Gregory Kafoury, OSB No. 741663**
kafoury@kafourymcdougal.com
**Mark McDougal, OSB No. 890869**
mcdougal@kafourymcdougal.com
**Jason Kafoury, OSB No. 091200**
jkafoury@kafourymcdougal.com
Kafoury & McDougal
411 SW Second Avenue, Suite 200
Portland OR 97204
Phone: (503) 224-2647
Fax: (503) 224-2673

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CHRISTOPHER GARZA, | Case No.    3:22-cv-00721-HZ |
| Plaintiff, | PLAINTIFF'S FRCP 26(a)(2) EXPERT DISCLOSURES |
| vs. | |
| CITY OF SALEM, an Oregon municipal corporation; and OFFICER DAVID BAKER, an individual, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 26(a)(2) and the Stipulated Supplemental

Scheduling Order, plaintiff Christopher Garza makes the following expert disclosures.

**RETAINED EXPERTS**

1.      Adam Bercovici is an expert in police use of force.

**FRCP 26(a)(2)(B)(i):** Mr. Bercovici's report of all opinions he will express and the basis and

reasons for them are attached hereto as Exhibit 1.

PAGE 1 – PLAINTIFF'S FRCP 26(a)(2) EXPERT DISCLOSURES

**FRCP 26(a)(2)(B)(ii):** The facts and data considered by Mr. Bercovici in forming his opinions is set forth in his report attached as Exhibit 1, pp. 2-3.

**FRCP 26(a)(2)(B)(iii):** Exhibits that will be used to summarize or support Mr. Bercovici's opinions are set forth in Exhibit 1 to Mr. Bercovici's report at Exhibit 1.

**FRCP 26(a)(2)(B)(iv):** A copy of Mr. Bercovici's CV, which describes his training, qualifications, and publications authored in the last 10 years is attached hereto as Exhibit 1, Exhibit D.

**FRCP 26(a)(2)(B)(v):** Cases in which Mr. Bercovici has testified in the previous 4 years are set forth in his Exhibit 1 report at Exhibit C.

**FRCP 26(a)(2)(B)(vi):** Mr. Bercovici's statement of compensation to be paid for the study and testimony is set forth in his Exhibit 1 report at Exhibit B.

      2.      Mallik Tella, M.D, is an orthopedic surgeon.

**FRCP 26(a)(2)(B)(i):** Dr. Tella's report of all opinions he will express and the basis and reasons for them are attached hereto as Exhibit 2, pp. 2-3.

**FRCP 26(a)(2)(B)(ii):** The facts and data considered by Dr. Tella in forming his opinions is set forth in his report attached as Exhibit 2, p. 1-2.

**FRCP 26(a)(2)(B)(iii):** Exhibits that will be used to summarize or support Dr. Tella's opinions are set forth in his report attached as Exhibit 2, p. 1.

**FRCP 26(a)(2)(B)(iv):** Attached hereto as Exhibit 3 is a copy of Dr. Tella's CV, which describes his training, qualifications, and publications authored in the last 10 years.

**FRCP 26(a)(2)(B)(v):** Cases in which Dr. Tella has testified in the previous 4 years are set forth in his report at Exhibit 2, p. 3.

PAGE 2 – PLAINTIFF'S FRCP 26(a)(2) EXPERT DISCLOSURES

**FRCP 26(a)(2)(B)(vi):** Dr. Tella's statement of compensation to be paid for the study and testimony is set forth in his report at Exhibit 2, p. 3.

3. Richard Tobin, M.D., is a Board-certified orthopedic surgeon specializing in shoulder conditions, sports medicine, and general orthopedics. Dr. Tobin is a medical provider who treated plaintiff for his injuries from the incident. Dr. Tobin is listed as an expert out of an abundance of caution. Dr. Tobin will testify as to the opinions and conclusions that he arrived at while treating plaintiff and as set forth in the letter attached hereto as Exhibit 4. Dr. Tobin's qualifications are submitted herewith in the CV attached as Exhibit 5. Dr. Tobin's medical records have been previously produced. Dr. Tobin's rate sheet is attached as Exhibit 6.

DATED this 29th day of September, 2023.

KAFOURY & MCDOUGAL

*/s/ Jason Kafoury*
Jason Kafoury OSB# 091200
jkafoury@kafourymcdougal.com
Of Attorneys for Plaintiff

**KAFOURY & McDOUGAL**
411 SW 2nd. Ave. Ste. 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND  DIVISION

CHRISTOPHER GARZA

*Plaintiff,*

   v.

CITY OF SALEM, an OREGON
municipal organization: and
OFFICER DAVID BAKER, an
Individual,

*Defendants,*

Case No. 3:22-cv-00721-HZ

## EXPERT REPORT OF ADAM BERCOVICI
### August 8, 2023

   In compliance with  Rule of Civil Procedure 26(a)(2), I hereby certify that this report is a complete and accurate statement of all of my opinions and the basis and reasons for them, to which I will testify under oath.

*Adam Bercovici*

_____
### Adam Bercovici

August 8, 2023

Bend Oregon

1

Exhibit 1
Page 1 of 25

## I.     INTRODUCTION

I have been retained as a police use of force and best practices expert by counsel for Plaintiff Christopher in the matter of Christopher Garza v. City of Salem and Officer David Baker.     I have been asked to offer opinions in the areas of Reasonable Suspicion, lawful detention, and use of force as it relates to the conduct of Salem Police Officer David Baker and the events that occurred on September 17, 2021, at approximately 00:54 hours at 2305 Commercial Street NE in the city of Salem Oregon.

## II.     FACTUAL SUMMARY

On September 17, 2021, Christoper Garza, who resides at 2305 Commercial Street NE, Salem, Oregon, was approached by some individuals, Juan Carlos Gomez Valles and Hector Gonzalez Nunez , who were having issues with a 2007 Honda Accord that Valles owned. Garza was living on the property in a mobile home. Garza paid a monthly rent to live on the property, which also housed OK Tires. As part of his agreement with the property owner, Garza would keep an " eye" out for trespassing individuals. Garza had a legal right to be on the property at any time, day or night.

Garza and Valles were by the car with the hood open, and Nunez was in the driver's seat. That was the extent of their activity. No one was under the dash, nor was anyone attempting to alter the V.I.N. ( Vehicle Identification Number) or conceal or change license plates. At approximately 00:54 hours, Salem Police Officer David Baker drove into the business's driveway. In his report, Officer Baker stated that the Honda was covered in dust and that a lone male was seated in the driver's seat. Baker then noticed two other individuals standing around the open hood. That was the extent of his observations. Officer Baker said he decided to make an

2

Exhibit 1
Page 2 of 25

investigative stop because Hondas are frequently stolen in Salem. He further said in his official police report that two of the men were working on the car. Officer Baker exited his police vehicle and approached the three men. At this point, Garza and Officer Baker had some kind of interaction. In their depositions, both men agreed that Garza told Officer Baker he should leave. For this factual summary, I will surmise that Garza telling Officer Baker to leave is what occurred. At this point, Officer Baker stated he believed Garza had some object in his hand. Officer Baker grabbed Garza, wrenched his arm behind his back in a shoulder lock, and pushed him onto the hood of the police vehicle. Officer Baker continued to use force and maintained a shoulder lock on Garza. He then placed Garza in the back of the police vehicle. Within moments of this incident, Salem Police Officers Felix and Kizzar arrived on the scene. Very quickly, it was determined that the Honda was not stolen, and that Garza did live at 2305 Commercial Street NE. It was also determined that no crime had occurred. Garza was released from police custody.

The opinions stated in this report are based on information available as of the date of this report. I have reviewed the materials described in Exhibit A. If and when any new evidence arises, I reserve the right to supplement or modify my opinions to reflect that evidence. If Defendants submit any response to my expert report, I reserve the right to respond to any issues raised by those reports.

## II SUMMARY OF OPINIONS

For the reasons set forth below, I conclude that:

3

Exhibit 1
Page 3 of 25

1. On September 17, 2021, at 0054, Officer David Baker illegally detained Christopher Garza. That Officer Baker had neither Reasonable Suspicion or Probable Cause to effect forced detention. Officer Baker's actions were not in good faith or police best practices and were based on a hunch and not factual evidence.

2. While engaging in this improper detention Officer, Baker used force that was not objectively reasonable.

3. That Officer Baker the force that Officer Baker uses fell under Title 18, U.S.C., Section 242 Deprivation of Right Under the Color of Law

## III     BACKGROUND AND EXPERIENCE

I had a thirty-year career with the Los Angeles Police Department (LAPD). From 1982 to 2012, I held the following positions:

- Patrol Officer I - Academy - Foothill Area (1982-1984)
- Police Officer II - Wilshire Area (1984)
- Police Officer II - Operations West Bureau CRASH (1984-1985)
- Police Officer III-Training Officer - Wilshire Area (1985-1987)
- Element Member & K9 Handler - Metropolitan Division (1987-1993)
- Sergeant- 77th Street (1993-1994)
- Sergeant II-Vice Supervisor - W.L.A. Area
- Sergeant II - Watch Commander - Van Nuys Area (1996-1998)
- Sergeant II - Associate Advocate - Internal Affairs Division (1998-1999)
- Lieutenant I - Watch Commander - North Hollywood Area (1999-2000)
- Lieutenant I Mobile Field Force Leader, Operations Valley Bureau ( 2000)
- Lieutenant II - Burglary-Auto Theft Division & Officer-in-Charge of the Interstate Theft Task Force (2000-2001)
- Lieutenant II - F.B.I. Violent Crime Task Force & Officer-in-Charge of Los Angeles-Joint Terrorism Task Force (2001-2003)
- Lieutenant II - Officer-in-Charge of Special Investigation Section, Major Crimes Division, Robbery-Homicide Division (2003-2011)

4

Exhibit 1
Page 4 of 25

- Lieutenant II - Officer-in-Charge of Homicide Special Section, Robbery-Homicide Division (2011-2012)

As a Police Officer I, II, and III, I was assigned to a specific car in my division of assignment. In these assignments, I regularly responded to major incidents where there was the potential for the use of force. For these first five years, I handled dozens of calls where individuals were either combative or exhibiting behavior that could result in the use of force. During that period, I was trained in and applied de-escalation methods to defuse tense and uncertain situations. These incidents included people that were armed with weapons, including knives and firearms. In 1986 two officers and I negotiated with a suicidal man at the top of a multi-story building who threatened to jump. I was the primary negotiator and could de-escalate the situation to the point where he could be taken into custody and provided with the needed help. In 1988 I received a major commendation for negotiating with a suicidal man who was armed with a handgun that he had placed in his mouth. Because of my training and adherence to best practices, I could de-escalate the situation so the subject could be disarmed and then provided with the help he needed. I have experience in successfully handling calls where de-escalation has been used successfully. I was also trained during those formative years in the elements of reasonable Suspicion and probable cause and how the development of both of those legal standards had to be based on articulable facts and objective evidence.

As a field sergeant, I routinely had direct oversight over first responders responding to calls for service where de-escalation methods were used. As a field sergeant, I provided on-scene supervision and regular training for my subordinate officers in the most current and up-to-date methods for handling calls where the use of force was a potential outcome. In addition, I also received and then provided regular training to my officers in the use of force, including instruction and scenario-based training on the standard of objective reasonableness and how it

5

Exhibit 1
Page 5 of 25

applied to the use of force. I also trained my subordinates in de-escalation methods to avoid the unnecessary use of force. This training included formal instruction at roll calls, training days, and discussions on current case law and policy. This training was regularly applied on calls for service. After the call was completed, I completed a de-brief of the incident, and formal documentation was provided to the Patrol Commanding Officer for review. During my years as a field sergeant, I was also responsible for ensuring that my subordinates acted within their legal authority while engaging in investigative stops. My responsibility extended to providing continuous training in the legal standards to be met when stopping and detaining citizens.

In 1996 I was promoted to Sergeant II Watch Commander assigned to the Van Nuys Area. In that role, I was responsible for up to seventy-five officers and ten supervisors each shift. During off-hours, I commanded the entire station and was responsible for all significant incidents in the division. As a Watch Commander, I responded to major incidents as the Incident Commander and established all operational protocols. Frequently these incidents involved combative or uncooperative suspects, including suicides and calls where the use of force was a potentiality. As a result, I ensured that my officers received the necessary departmental training at roll call and formalized area training. I was one of the primary instructors in handling critical incidents, including using force and de-escalation methods. Because the role of Watch Commander was all-encompassing, I was tasked with training subordinate officers in tactical response to calls, using less-lethal, de-escalation, use of force policy, and deadly force and positional asphyxiation. The training was conducted on a daily basis, and I regularly provided formalized follow-ups to ensure that the information was being properly retained. I also completed regular scenario-based training where each officer's tactical thought process could be properly evaluated. As a Watch Commander, I approved all reports from any officer booking a

6

Exhibit 1
Page 6 of 25

person(s) into my station. Van Nuys Area was the largest station in Operations Valley Bureau. On any shift, officers from the LAPD, California Highway Patrol, Transit Police, and the Los Angeles Country Sherriff's Office would bring arrest reports for me to approve. In that position, I ensured that all of the elements necessary for a legal stop, detention, and arrest were met. There were occasions in my review of arrest reports when I discovered that critical details were missing. When that occurred, I either had them reinvestigate or, if necessary, release the person arrested.

In 1998 I was assigned to Internal Affairs Division as an Advocate, presenting disciplinary cases to Police Boards of Rights. The Board of Rights is based on the Uniform Code of Military Justice and is similar in form and function to a court-martial. In that assignment, I presented several cases that involved the use of force and deadly force where substandard tactics, including failure to de-escalate, were contributing factors. I also presented multiple cases where arrests and or detentions were problematic. Some of these cases led to severe discipline, including termination.

In 1999 I was promoted to Lieutenant and assumed the position of Watch Commander in the North Hollywood Area. My duties were similar to my assignment at Van Nuys but in a higher civil service and managerial role. I was the sole management representative in Operations Valley Bureau and occasionally the entire city on many nights. I responded to and assumed command of significant incidents, including when the use of force occurred. I also responded to many officer-involved shootings and in-custody deaths, where I managed the incident and notified the appropriate investigative entities. As a Lieutenant Watch Commander, I was also responsible for training my subordinates in various operational duties, including calls for service involving mental health crises, tactical responses, and consideration. I updated training,

7

Exhibit 1
Page 7 of 25

including case law and department policy, as it applied to the use of force. As Lieutenant, I was the primary reviewer in my command of all non-categorical ( not deadly force) incidents. I provided training, completed complaints if appropriate, and recommended training and discipline up to and including termination. I also reviewed and recommended discipline for officers who were the subject of complaints that involved a " bad arrest or detention." It was not uncommon for me to recommend discipline up to and including termination.

From 2000 to 2003, I was the Officer-in-Charge of two federal task forces, the Interstate Theft Task Force and the Violent Crime Task Force. As the Officer-in-Charge of the Violent Crime Task Force, I supervised personnel from the Los Angeles County Sheriff's Department, the Federal Bureau of Investigation, the Bureau of Alcohol Tobacco and Firearms, and the LAPD. The  Interstate Theft Task Force dealt specially with organized theft groups, including individuals involved with auto theft and the subsequent transportation of stolen cars and car parts to areas outside of the U.S.

In 2003, I assumed leadership of the Special Investigation Section, an investigative, surveillance, and apprehension team that oversees investigations only of major felony crimes. The Special Investigation Section is a tactical unit that uses a variety of advanced weaponry. As a result, I developed a comprehensive selection process where candidates were vetted and selected based on their knowledge of the use of force policies and related current legal decisions. This selection process was certified through CA POST.

In 2011, I was assigned to the Homicide Special / Robbery-Homicide Division as the Officer-in-Charge. In that capacity, I managed specialized homicide detectives and oversaw some of the most high-profile homicide cases in Los Angeles. The Homicide Special Section was also the primary criminal investigative component for all categorical uses of force, including

8

Exhibit 1
Page 8 of 25

officer-involved shootings and in-custody deaths. As the Officer-in-Charge, I managed and supervised these investigations to determine if there was criminal culpability on the officer's part. During this time, I also did several rotations as the Acting Commanding Officer of the Robbery-Homicide Division.

III.     OPINIONS ON OFFICER BAKER'S DETENTION OF CHRISTOPER GARZA

Christopher Garza resided at 2305 Commercial NE in the City of Salem.   He paid a monthly rent of $200 and lived in a trailer which was located at the Commerical Street address, along with a business, OK Tires. Garza had a legal right to be on the property early on September 17, 2021. When his acquaintances pulled up in the 2007 Honda Accord and asked for help to figure out why the car was not operating correctly, he also had a legal right to do that.

Reasonable Suspicion is defined as **a legal standard of proof in the United States that is less than probable cause but more than a hunch. It is based on specific and articulable facts and rational inferences from those facts. It allows a police officer to stop and sometimes search a person thought to be involved in criminal activity at the time.**

In his deposition and report, Officer Baker states that as he drove by the 2305 Commercial NE location, he observed an individual sitting in the driver's seat of a 2007 Honda Accord. His first thought was that this person was trying to steal the vehicle.[1]  A passing thought is just that, a thought. It is not even a hunch defined as " a feeling or guess based on intuition rather than known facts."  I spent 30 years in Law Enforcement, mostly working, supervising, or managing

---

[1] Baker Deposition 31 18-22

Exhibit 1
Page 9 of 25

operational units.  If a police officer is going to rely on Reasonable Suspicion, then he must have

articulable facts. As Officer Baker describes his thought, it is not, in my opinion, fact-based.

Officer Baker states he " thought" this because Hondas are often stolen in Salem. I spent many

years working in the field. I have made dozens of arrests for car theft.  A police officer needs to

support his actions by relying on his prior arrest, training, and statistical information ( number of

car thefts in a specific area) on locations where cars are either dumped or chopped up for sale. In

addition, you need information from the detectives/investigators that handle follow-up

investigations. When I commanded the Interstate Theft Task Force, we regularly provided this

information to Southern California Law Enforcement Agencies so that they could develop their

Reasonable Suspicion and Probable Cause. Officer Baker includes none of that information in

his report or his deposition. He states that he likes to make stolen car arrests. Baker does not

indicate how many arrests he has made. He doesn't discuss, either in his report or his deposition,

that he made the decision to stop at OK Tires on anything, but I thought they were stealing the

car because one person was sitting in the driver's seat, and then two other men were standing by

the open hood. Baker mentions that Hondas are frequently stolen in Salem. Did he cite crime

statistics? No.  Did he learn this from the detectives at Salem? These facts or pieces of

information are never mentioned. Did he know this from specialized training?  He is pretty clear

in his deposition that he has no specialized training; he just likes to make stolen car arrests, but

we never discover how many he has made. There is no evidence that the Salem Police

Department has acknowledged his car theft expertise. He has given himself that title, so he is

adept at arresting car thieves.  It is my opinion that Baker had  developed no reasonable

suspicion to make an investigative stop. It is also my opinion that Baker saw three Hispanic

males around a Honda, which he states are often stolen in Salem, and decided to effect an

10

Exhibit 1
Page 10 of 25

investigative stop for that reason. I spent many years supervising and training officers not to do what Officer Baker did. Racial Profiling is defined as the use of race or ethnicity to for suspecting someone of having committed a crime. I have adjudicated hundreds of police personnel complaints. Part of my process ( which the LAPD trained me in) was a process of elimination when looking at the facts. Officer Baker had no reason to make an investigative stop; the facts or any supporting evidence to make that stop did not exist. What is left is the uncomfortable truth that Baker made the stop because the men standing by the Honda were Hispanic.

When Officer Baker exited his vehicle and approached Garza and the other men, he was not under that standard of Reasonable Suspicion or Probable Cause. He had no legal right to detain any of the men. He needed to continue his field investigation, exercise patience, and street smarts. When Garza told him to leave, there was nothing that Baker could do. Officer Baker states in his report that his Suspicion grew.[2]  He states that Garza was confrontational. Baker should have de-escalated and attempted to find out what was happening.   What Baker does is accuse Garza of stealing the Honda. Garza is on a property where he has a legal right to be. He is helping his friends. Officer Baker has concluded that they are all car thieves based on a thought. It seems perfectly reasonable that Garza would be upset. At this time, Officer Baker states that he observes that Garza has an object in his hand and that his other hand is empty. He does not want Garza to obtain any object that could be construed as a weapon and escalate this situation further.[3]  This statement is not supported by fact.   This mysterious object that precipitated the detention was never located or mentioned in the arrest report.   However, this " object" was the ignition point for Officer Baker's extended use of force. It is my opinion that Officer Baker,

---

[2] GARZA 000002
[3] GARZA 000002

11

Exhibit 1
Page 11 of 25

based on the information that he articulated, did not have the Reasonable Suspicion to either make his investigative stop or detain Christoper Garza.

IV.     OPINIONS THAT OFFICER BAKER'S USE OF FORCE WAS NOT
        OBJECTIVELY REASONABLE

In the previous section (IV), I opined that Officer Baker had neither Reasonable Suspicion nor Probable Cause to detain Christopher Garza. I also believe Officer Baker's use of force during an illegal detention was not objectively reasonable.

Graham v. Conner[4] established a set of criteria to determine where the use of force by law enforcement was objectively reasonable.   Officer Baker's actions should be examined under those standards:

**The severity of the crime at issue**

There was no crime. Christopher Garza was at his place of residence, helping some friends with a car. That is a fact. He was not committing a felony or misdemeanor. Based on non-existent Reasonable Suspicion, Officer Baker made the stop, grabbed Garza based on his observation of a yet-to-be-identified " object," and then shoulder-locked Garza and drove him into the hood of the police car. According to Garza, Baker also punched him.

**Whether the person posed an immediate threat**

Garza presented no threat whatsoever. It is my opinion, based on years of experience, that he was attacked by  Officer Baker, who was the real threat. Garza did not threaten Baker. Garza did not

---

[4] 490 U.S. 386 (1989)

12

Exhibit 1
Page 12 of 25

have a weapon. Garza made no move to harm Baker in any way. He was, however, violently assaulted by Baker, a police officer for the city of Salem, Oregon.

**Whether the person was actively resisting or trying to evade arrest by flight**

There is no evidence that Garza was actively resisting. The CCTV of the incident shows an overwhelmed Garza being thrown around by Officer Baker and offering no resistance. It is my opinion that, in this case, Garza was the victim, and Officer Baker was the perpetrator.

**The circumstances that are tense, uncertain, and rapidly evolving**

Baker created this scenario by initiating a bad stop and then illegal detention. He had control of Garza, which is evidenced in the CCTV. It is my opinion that the situation was uncertain for Christopher Garza, who Officer Baker assaulted.

In addition to not meeting evaluating standards of Graham v. Conner Baker also violated the Salem Police Department Use of Force Policy: The Use of Force Policy[5] of the Salem Police Department states: It is the policy of this department that the use of force by its members be:

**Justified under applicable state law**

ORS 161.235 states that *a police officer is justified in using physical force upon another person only when and to the extent that the peace officer reasonably believes it to be necessary. (1) to effect an arrest or to prevent the escape from custody of an arrested person unless the peace officer knows the arrest to be unlawful or (2) for self-defense or to defend a third person from what the peace officer reasonably believes to be the use or imminent use of physical force while making or attempting to make an arrest or while preventing or attempting to prevent escape.* It

---

[5] COS 000708

Exhibit 1
Page 13 of 25

is my opinion that Officer Baker met none of the aforementioned standards. The evidence is clear that this was an illegal detention, so there was no arrest scenario to support using force. There was no element of self-defense, and there was no imminent threat.

**Professionally accomplished according to approved training and with approved equipment.**

It is my opinion, based on the evidence that I reviewed, that Officer Baker committed a criminal assault on the person of Christoper Baker (ORS 163.160 (1)(a), *A person Commits the crime of assault in the fourth degree if the person: Intentionally, knowingly or recklessly causes physical injury to another.* It is my opinion that the force that Officer Baker used was a criminal act and not within the course and scope of his duties as a police officer.

**Limited to that degree and duration which the officer reasonably believes necessary to accomplish that objective, and officers will only use such force as is objectively reasonable under all circumstances taking into account the person's emotional and mental state.**

There was no legitimate objective. It is my opinion that Officer Baker made an illegal detention and then used excessive force to maintain his control of Christopher Garza

**Applied by the officer and reviewed by the department based upon those facts which are reasonably believed by the officer at the time, applying legal requirements, department policy, and approved training to those facts. Facts later discovered, but unknown to the officer at the time, can neither justify nor condemn an officer's decision to use force**

It is my opinion that there were no reasonable facts that would support the use of force in this matter. Officer Baker's statement of an " object" was not a justification to use force. Officer Baker did not meet the standards of evaluation under Graham v. Conner, and he violated his own training by making an illegal detention and then using force that was neither reasonable nor necessary. In addition, I saw no evidence in the material I was provided of any kind of supervisory investigation, use of force evaluation, or executive or management review and

14

Exhibit 1
Page 14 of 25

analysis. It is my opinion that without these systems in place, the Salem Police Department

ratified and condoned the excessive use of force used by Officer Baker on Christopher Garza.


I was a police supervisor and manager for almost two decades. I have reviewed and evaluated,

and adjudicated hundreds of complaints. Many of the complaints I adjudicated involved

excessive force.   Officer Baker's use of force is so clearly over the top that I wonder, as a former

police manager, why he is still working in Law Enforcement. I believe he is not suited by

temperament,  integrity, or ethics for the job. His use of force was not objectively reasonable, did

not meet the standards of evaluation as outlined in Graham v. Conmner, and his tepid attempt to

justify his abuse of Christopher Garza is a stain on law enforcement. No reasonable officer

would have behaved as Baker did. And no reasonable police department should retain him.



### V.       OPINION THAT THE ACTIONS AND FORCE USED BY OFFICER BAKER

### FELL UNDER TITLE 18, U.S.C., SECTION 242, DEPRIVATION OF RIGHTS

### UNDER COLOR OF LAW

Section 242 of Title 18 makes it a crime for a person acting under the color of any law to

willfully deprive a person of a right or privilege protected by the Constitution or laws of the

United States.[6]

---

[6] Civil Rights Division U.S. Department of Justice

15

Exhibit 1
Page 15 of 25

*Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, ... shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.*

Officer David Baker, in my opinion, made not only a bad stop but an illegal one. He had no articulable facts to support his detention of Christopher Garza.   Baker said a " thought' guided him to initiate the stop. Instead of having a consensual encounter and taking the time to find out what was occurring, he escalated the situation.    While it is not disputed that Garza told him to leave, there was no crime in that statement. I believe Baker fell into the trap of " contempt of cop," where he felt that Garza's refusal to speak with him was an affront to his authority. As a result of this, he used his power as a police officer to illegally detain Garza and then used force that was unreasonable, excessive, and that injured Garza.

This use of force was part of illegal detention and met, in my opinion, the elements of depriving Christopher Garza of his freedom under the color of law. I spent two decades supervising subordinate police officers, and one of the critical things I taught was that great responsibility

16

Exhibit 1
Page 16 of 25

comes with the power invested in you as a law enforcement officer. A police officer can deprive someone of their freedom and sometimes their life. The facts developed to enact those decisions must be carefully balanced against officers' emotions and egos. The elements of Deprivation of Rights Under Color of Law are very clear: Officer David Baker of the Salem, Oregon Police Department deprived Christopher Garza of his rights, privileges, or immunities secured or protected by the Constitution, and bodily injury did occur as a result of the acts committed by Officer Baker.

When I was assigned to LAPD internal affairs, we terminated officers for actions similar to those of Officer Baker. If the actions were egregious enough, the officer's case was referred to both the District Attorney's and the U.S. Attorney's Office for criminal filing. It is my opinion that the actions of Officer David Baker met the criteria for criminal filing.  It is also my opinion that the Salem Police Department,  by not investigating Officer Baker's actions and then applying the correct disciplinary measures, ratified and condoned the illegal detention of Christopher Garza. Their failure to investigate and discipline Officer Baker for his criminal assault on Christoper Garza was also a ratification of acts that should not be part of a professional police department.

17

Exhibit 1
Page 17 of 25

CAD Reports  COS-000333-380

Audio Files COS381—403

Incident Reports  COS 000404-475

CAD Reports 000476-481

CAD-Baker 000482

Use of Force Reports COS 000483-545

Incident Details COS 000546

Correction Clients COS 000548-676

Training Records David Baker COS 000677-695

Salem Job Description COS 000696-698

SPD Polices  COS 000699-763

Map Districts-  COS 000765

Querry Reports- 000766-000791

Deft Response-

Audio COS 000001

Response Report COS-000002-11

Use of Force Reports  COS 000012-000083

Use of Force Supplementals- COS 000084-000332

Subpoenas

Medical Records

18

Exhibit 1
Page 18 of 25

Pleadings

Deposition Garza

Deposition Gomez Valles

Deposition Nunez

Deposition Baker

Deposition Baker

Deposition Felix

Deposition Kizzar

Deposition Kuvaldin

Social Media

19

Exhibit 1
Page 19 of 25

## **Titan National Consulting Group, L.L.C. Expert Fee Schedule**

<mark>Retainer-Non-Refundable-$5000 (must be paid prior to the commencement of any work)</mark>

Fees will be subtracted from the initial retainer until it is depleted, at which point billing will be for work completed. The client will be invoiced every 30 days.   Invoices are due within 15 days of receipt.

Late fees are applied for payments that are past 30 days. Late fees are 2% of the outstanding invoice and will be applied for any additional 30 days that a payment is outstanding.

Document review/preparation/report completion- $400.00 per hour

Deposition/Trial Testimony-$500.00

Air, Car Rental, Lodging, and Per Diem will be billed and itemized separately from case billing. **Travel and lodging invoices are due on receipt.**

Air Travel: Business Class/First Class

Lodging: Premium accommodations-four-five star

Travel Time: $150.00 per hour-portal to portal ($2000-day maximum) Travel Related Expenses: gas, mileage (Federal Rate). Per diem $ 120. 00 per day

20

Exhibit 1
Page 20 of 25

EXHIBIT C

Expert Cases ( Deposition, Report and Trial Testimony) in Past Four Years

- Henry v. Municipality of Anchorage - United States District Court of Alaska - Case No. 3:15-cv-000187-RRB - Deposition-Rule 26-Report Plaintiff Verdict IA Best Practices-Brady (D)

- Lassarte v. Catalina Cylinders - Los Angeles Superior Court - B295059 - Deposition Defense Verdict (D)

- Fear v. City of Exter - Superior Court State of California, County of San Luis Obispo Case No. 17CV-0529 - Deposition and Trial Testimony Plaintiff Verdict ( 21 million dollar verdict)  Qualified as a K9 Expert (P)

- Contreras v. Compton - United States District Court for the Central District of California - Case No. 2:17-CV08834-FFM - Deposition-Rule 26-Report Settlement  (D)

- Hunnicutt v. MARTA - Superior Court of Fulton County (Georgia) - Case No. 2017CV290575 – Deposition-Crime Foreseeability (P)

- Thurman v. Spokane - Superior Court of Washington for Spokane County - No. 19-2-03787-32 - Deposition-Report Internal Affairs Best Practices (P) Plaintiff Verdict 19 million dollars

- Wence v. Cruz Superior Court-State of California-Contra Costa County-C18-02060-Deposition-Settled (D)

- Hartt v. Keizer Police Department- Marion County Superior Court, Salem, Oregon 18CV29560-Trial Testimony-Defense Verdict  Qualified as a  K9 and Use of Force Expert (P)

- Bryant v. County of United States District Court for the Central District of California:20-cv-09582-JFW-E  Deposition Rule 26- Report Trial Testimony  Plaintiff Verdict (30 million dollars) Qualified as Police Best Practices Expert (P)

- Depp v. Heard-Virginia State Court- Fairfax County CL-2019-0002911 Deposition and appearance at trial. Report (D)

- Sands v. District of Columbia  2021-CA699B-Rule 26 Report -Deposition Police Use of Force-Crowd Control (P)

21

Exhibit 1
Page 21 of 25

- Gittler v. Midjit Market District Court Clark County, NV Case No. A-19-788723-c-Report- Case Settled  (D)

- Chavez v. City of Vernon-Riverside, California Superior Court- BC719460 Deposition mistrial. (D)

- Upson v. City of Phoenix- Arizona State Court- Rule 26 Report-Deposition-Settled  (P)

- Hart v. City of Redwood United States District Court Northern District of California Case No. 3:21-cv-02653 Rule 26 Report Deposition Police Use of Force (P) Case in appeal

- Anderson v. Securitas  Circuit Court State of Oregon  Case No. 19CV45425-Trial Testimony Qualified as Security Best Practices Expert (D)

- De Los Santos V. Weith  Superior Court for the State of California, County of San Francisco Case no. C.G.C. 19-578634 Deposition Case Settled (P)

- Hurley v. Nevada Property d/b/a Cosmopolitan Case No A-21-8344560-C- Superior Court Clark County Deposition Report (P)

- Hector Hernandez v. City of Fullerton Case No. 8:20-CV-01747-CJE-JDE Rule 26 Report Deposition (P) Case Settled

- Bethany Farber v. City of Los Angeles  Case no. 2:19-cv-JAM-CKD Rule 26 Report Deposition (p) in the appeal process

- Michael Jacobs v. Denver Police Department (p)  Case No. 2021CV33187 Rule 26 Report-Case Settled

- Diane Ramirez v. Patriot Shield Case (p)No 2:19-cv-JAM-CKD Rule 26 report

- Tovar v. City of San Jose (p) Case No 5;21-cv-02497  Rule 26 Deposition

22

Exhibit 1
Page 22 of 25

# ADAM BERCOVICI
*Results-Centric, Solutions-Focused Police Practices and Security Expert*

**Bend, OR 97702 │ (661) 607-4324 │ adam@titanncg.com**

**Nationally Recognized Police Policy Expert** who offers 40+ years of proven law enforcement, security, investigative, and consultative experience and who serves as a subject matter expert across all facets of police initiatives in high-risk, high-demand environments. **Highly Accomplished Leader** who exhibits advanced knowledge of law enforcement trends, best practices, and protocols and who contributes talent in working with national and international and / or public- and private-sector clients with utmost confidentiality and professionalism. **Engaging, Influential Communicator** who is regularly sought after by major media outlets for expertise and who leads industry peers by example and with ethics and integrity while establishing unwavering credibility and reliability within law enforcement and security communities.

## Professional Experience

- Leveraged industry knowledge toward leading many of America's most elite police investigative units, including serving on the F.B.I. Violent Crime Task Force, Criminal Investigation Section, Joint Terrorism Task Force, Special Investigation Section, Homicide Special Section, and Robbery Homicide Division.
- Recognized as a California and Oregon State-licensed private investigator and served as the former C.E.O. of Critical Solutions Protective Services Group – a licensed security company that provided both security guard and off-duty police officers to two of the most high-profile retail centers in California.
- Spearheaded the research, development, and publication of comprehensive, solutions-focused policy papers on officer-involved shootings and developed systems to respond to active shooter scenarios.
- Demonstrated experience as an expert witness on police use of force as it applies to advanced tactical operations, excessive force violations, shooting policy, surveillance, and policy internal investigations, as well as use of deadly force and accountability and post-incident investigations.
- Delivered excellence in advisory services on security guard recruitment, hiring, training, and best practices, as well as the implementation of premise liability and special undercover tactics as required.
- Built and sustained a lucrative client base with *Fortune* 500 and entertainment industry companies and / or individuals, including developing productive partnerships with insurance carriers and attorneys.
- Regularly performed as an on-camera expert and executive producer for The Discovery Channel network, including most recently for the limited series *American Cartel*.

## Expert Cases – Deposition, Report & Trial Testimony (Details Upon Request)

- Bassi, Edlin, Hui & Blum L.L.P. – *Lassarte v. American Cylinder (Expert – Criminal Conspiracy)*
- Henry v. Municipality of Anchorage – United States District Court of Alaska – Case No. 3:15-cv-000187-RRB – Deposition-Rule 26-Report Plaintiff Verdict IA Best Practices –Brady (D)
- Mya Hendrix v. City of San Diego Case No. 37-2019000002275-CU-PO-CTL Case Dismissed (D)
- Lassarte v. Catalina Cylinders – Los Angeles Superior Court – B295059 – Deposition Defense Verdict (D)
- Fear v. City of Exter – Superior Court State of California, County of San Luis Obispo Case No. 17CV-0529 – Deposition and Trial Testimony Plaintiff Verdict ($21-MillionVerdict) Qualified as a K9 Expert (P)
- Contreras v. Compton – United States District Court for the Central District of California – Case No. 2:17-CV08834-FFM – Deposition-Rule 26-Report Settlement (D)
- Hunnicutt v. MARTA – Superior Court of Fulton County (Georgia) – Case No. 2017CV290575 – Deposition-Crime Foreseeability (P)
- Thurman v. Spokane – Superior Court of Washington for Spokane County – No. 19-2-03787-32 – Deposition – Report Internal Affairs Best Practices (P) Plaintiff Verdict 19 million dollars
- Wence v. Cruz Superior Court-State of California – Contra Costa County – C18-02060-Deposition-Settled (D)
- Hartt v. Keizer Police Department- Marion County Superior Court, Salem, Oregon 18CV29560 – Trial Testimony – Defense Verdict Qualified as a K9 and Use of Force Expert (P)
- Bryant v. County of U.S. District Court for the Central District of California:20-cv-09582-JFW-E Deposition Rule 26 – Report Trial Testimony Plaintiff Verdict ($30 Million) Qualified as Police Best Practices Expert (P)
- Depp v. Heard – Virginia State Court-Fairfax County CL-2019-0002911 Deposition & Trial Appearance. Report (D)
- Sands v. District of Columbia 2021 – CA699B-Rule 26 Report – Deposition Police Use of Force-Crowd Control (P)

23

Exhibit 1
Page 23 of 25

- Gittler v. Midjit Market District Court Clark County, NV Case No. A-19-788723-c-Report – Case Settled (D)
- Chavez v. City of Vernon-Riverside, California Superior Court – BC719460 Deposition mistrial. (D)
- Upson v. City of Phoenix- Arizona State Court – Rule 26 Report – Deposition-Settled (P)
- Hart v. City of Redwood United States District Court Northern District of California Case No. 3:21-cv-02653 Rule 26 Report Deposition Police Use of Force (P)
- Anderson v. Securitas Circuit Court State of Oregon Case No. 19CV45425 – Trial Testimony Qualified as Security Best Practices Expert (D)
- De Los Santos V. Weith Superior Court for the State of California, County of San Francisco Case No. C.G.C. 19-578634 Deposition Case Settled (D)
- Hurley v. Nevada Property d/b/a Cosmopolitan Case No A-21-8344560-C – Superior Court Clark County Deposition Report (P)
- Hector Hernandez v. City of Fullerton Case No. 8:20-CV-01747-CJE-JDE Rule 26 Report Deposition (P)
- Munger Toles and Olsen – *Vanessa Bryant v. County of Los Angeles (Police and I.A. Best Practices)*
- Charlson, Bredehoft, Cohen & Brown *Heard v. Depp (Police Best Practices)*
- Stream Kim Wicks Wrage and *Alfaro Chavez v. City of Vernon (Police Internal Affairs)*
- Cheong, Denove & Rowell – *Fear v. Exeter Trial Plaintiff Verdict (July 2021) (K9 Best Practices)*
- Law Offices of Keith Knowlton – *Upson v. City of Phoenix (K9 Best Practices)*
- Moregenstern Law Firm-Wence v. Cruz (Use of Force)
- Glasser Weil *Gross v. Gross (Expert – Private Investigations Best Practices)*
- Covington and Burling *Sands v. District of Columbia*
- Howard & Howard *Douris v. Henderson NV (Use of Deadly Force)*
- City of San Diego *Mya Hendrix v. City of San Diego ( Kidnap Investigations Best Practices)*
- Johnson v. Caesars Palace *(Premise Liability)*
- Kramer, DeBoer & Keane *(Security Guard Operations)*
- Law Offices of Michael Mills *Hunnicutt v. MARTA (Crime Foreseeability)*
- Law Offices of Patrick Buelna McCoy v. Vallejo *(Shooting Policy – Use of Deadly Force)*
- Law Offices of Pat Buelna Tovar v. San Jose

**Adam Bercovici │ (661) 607-4324** **Page Two**

# Expert Cases – Deposition, Report & Trial Testimony (Details Upon Request)
## *(continued)*

- Law Offices of Will Macke *Hartt v. City of Keizer (K9 Best Practices)*
- Littler Mendelson P.C *Henry v. Anchorage (Expert – Brady-Police Internal Affairs / Misconduct)*
- Richard A. Criummo & Associates *(Police Tactics – Officer Involved Shootings – Pursuit Policy)*
- Richards Watson *Gershon Contreras v. City of Compton (Police Investigation Best Practices)*
- Selman Breitman L.L.P. *Gitler v. Midjt Market (Premise Liability)*
- Law Officers of Mary Schultz Thurman v. Spokane *(Police Internal Affairs)*
- Heath and Yuen- *Santos v. Weith* (Security Guard Operations)
- Hall Griffin-*JohnI.L. Doe v. Mi Ju Security (Security Guard Best Practices)*
- Hamparyan Personal Injury-*Celani v. Westfield Corporation (Premise Liability)*
- Law Offices of John Buris-*Hart v. City of Redwood (Deadly Force)*

# Professional Synopsis

TITAN NATIONAL CONSULTING, L.L.C.     2012 – PRESENT
*Police Consulting, Expert & Investigative Company*
**Owner │ Consultant │ Senior Investigator**

CRITICAL SOLUTIONS PROTECTIVE SERVICES GROUP     2010 – 2017
*Los-Angeles-Based Security Company*
**C.E.O.**

LOS ANGELES POLICE DEPARTMENT     1982 – 2012
*Rapidly Advanced to Roles of Greater Accountability & Responsibility Due to Performance Excellence; Recipient of 50 Bureau / Major Commendations and 300+ Area Commendations; Recipient of the Police "Medal for Bravery" (1993) and Police "Meritorious Unit Citation" (1994) by the Los Angeles Police Department (LAPD).*
*Robbery – Homicide Division, Homicide Special Section*
**Lieutenant II │ Officer-in-Charge** (2011 – 2012)

*Robbery – Homicide Division, Special Investigation Section*
**Lieutenant II │ Officer-in-Charge** (2003 – 2011)

*Major Crimes Division, Criminal Investigation Section*
*Joint Terrorism Task Force – Surveillance Special Section*
**Lieutenant II │ Officer-in-Charge** (2002 – 2003)

24

Exhibit 1
Page 24 of 25

*Burglary – Auto Theft Division, Field Enforcement Section*
*Federal Theft Task Force*
**Lieutenant II** (2000 – 2001)

*North Hollywood Area*
**Lieutenant I** | **Watch Commander** | **Mobile Field Force Leader** (1999 – 2000)

*Internal Affairs Division, Advocate Section*
**Sergeant II** (1998 – 1999)

*Van Nuys Area*
**Sergeant II** | **Watch Commander** | **Assistant Watch Commander** (1996 – 1998)

*West Los Angeles Area*
**Sergeant II Vice Supervisor** ( 1995-1996)

*Operations West Bureau CRASH*
**Sergeant I** (1994 – 1995)

*77ᵗʰ Street Area*
**Sergeant I** (1993 – 1994)

*Metropolitan Division*
**Police Officer III** | **K9 Handler** (1989 – 1993)

*Metropolitan Division*
**Police Officer III** (1987 – 1989)

*Wilshire Area*
**Police Officer III** | **Field Training Officer** (1985 – 1987)

*Operations West Bureau CRASH*
**Police Officer II** | **Gang Suppression Officer** (1985)

*Wilshire Area*
**Police Officer II** (1984 – 1985)

*Foothills Area*
**Police Officer I** (1982 – 1984)

# Education & Professional Development

**Bachelor of Arts in English Literature**          CLAREMONT MCKENNA COLLEGE
**Certifications – Basic** | **Intermediate** | **Advanced** | **Supervisor** | **Management**          CALIFORNIA POST

**Excellent Professional References Provided Upon Request**

25

Exhibit 1
Page 25 of 25

# ADAM BERCOVICI

*Results-Centric, Solutions-Focused Police Practices and Security Expert*

**Bend, OR 97702 | (661) 607-4324 | adam@titanncg.com**

**Nationally Recognized Police Policy Expert** who offers 40+ years of proven law enforcement, security, investigative, and consultative experience, and who serves as a subject matter expert across all facets of police initiatives in high-risk, high-demand environments. **Highly Accomplished Leader** who exhibits advanced knowledge of law enforcement trends, best practices, and protocols, and who contributes talent in working with national and international and / or public- and private-sector clients with utmost confidentiality and professionalism. **Engaging, Influential Communicator** who is regularly sought after by major media outlets for expertise, and who leads industry peers by example and with ethics and integrity while establishing unwavering credibility and reliability within law enforcement and security communities.

## Professional Experience

- Leveraged industry knowledge toward leading many of America's most elite police investigative units, including serving on the FBI Violent Crime Task Force, Criminal Investigation Section, Joint Terrorism Task Force, Special Investigation Section, Homicide Special Section, and Robbery Homicide Division.
- Recognized as a California and Oregon State-licensed private investigator and served as the former CEO of Critical Solutions Protective Services Group – a licensed security company that provided both security guard and off-duty police officers to two of the most high-profile retail centers in California.
- Spearheaded the research, development, and publication of comprehensive, solutions-focused policy papers on officer-involved shootings and developed systems to respond to active shooter scenarios.
- Demonstrated experience as an expert witness on police use of force as it applies to advanced tactical operations, excessive force violations, shooting policy, surveillance, and policy internal investigations, as well as use of deadly force and accountability and post-incident investigations.
- Delivered excellence in advisory services on security guard recruitment, hiring, training, and best practices, as well as the implementation of premise liability and special undercover tactics as required.
- Built and sustained a lucrative client base with *Fortune* 500 and entertainment industry companies and / or individuals, including developing productive partnerships with insurance carriers and attorneys.
- Regularly performed as an on-camera expert and executive producer for The Discovery Channel network, including most recently for the limited series, *American Cartel.*

## Expert Cases – Deposition, Report & Trial Testimony **(Details Upon Request)**

- Bassi, Edlin, Hui & Blum LLP – *Lassarte v. American Cylinder (Expert – Criminal Conspiracy)*
- Henry v. Municipality of Anchorage – United States District Court of Alaska – Case No. 3:15-cv-000187-RRB – Deposition-Rule 26-Report Plaintiff Verdict IA Best Practices –Brady (D)
- Mya Hendrix v. City of San Diego Case No. 37-2019000002275-CU-PO-CTL Case Dismissed (D)
- Lassarte v. Catalina Cylinders – Los Angeles Superior Court – B295059 – Deposition Defense Verdict (D)
- Fear v. City of Exter – Superior Court State of California, County of San Luis Obispo Case No. 17CV-0529 – Deposition and Trial Testimony Plaintiff Verdict ($21-MillionVerdict) Qualified as a K9 Expert (P)
- Contreras v. Compton – United States District Court for the Central District of California – Case No. 2:17-CV08834-FFM – Deposition-Rule 26-Report Settlement (D)
- Hunnicutt v. MARTA – Superior Court of Fulton County (Georgia) – Case No. 2017CV290575 – Deposition-Crime Foreseeability (P)
- Thurman v. Spokane – Superior Court of Washington for Spokane County – No. 19-2-03787-32 – Deposition – Report Internal Affairs Best Practices (P) Plaintiff Verdict 19 million dollars
- Wence v. Cruz Superior Court-State of California – Contra Costa County – C18-02060-Deposition-Settled (D)
- Hartt v. Keizer Police Department- Marion County Superior Court, Salem, Oregon 18CV29560 – Trial Testimony – Defense Verdict Qualified as a K9 and Use of Force Expert (P)
- Bryant v. County of U.S. District Court for the Central District of California:20-cv-09582-JFW-E Deposition Rule 26 – Report Trial Testimony Plaintiff Verdict ($30 Million) Qualified as Police Best Practices Expert (P)
- Depp v. Heard – Virginia State Court-Fairfax County CL-2019-0002911 Deposition & Trial Appearance. Report (D)
- Sands v. District of Columbia 2021 – CA699B-Rule 26 Report – Deposition Police Use of Force-Crowd Control (P)
- Gittler v. Midjit Market District Court Clark County, NV Case No. A-19-788723-c-Report – Case Settled (D)
- Chavez v. City of Vernon-Riverside, California Superior Court – BC719460 Deposition mistrial. (D)
- Upson v. City of Phoenix- Arizona State Court – Rule 26 Report – Deposition-Settled (P)
- Hart v. City of Redwood United States District Court Northern District of California Case No. 3:21-cv-02653 Rule 26 Report Deposition Police Use of Force (P)
- Anderson v. Securitas Circuit Court State of Oregon Case No. 19CV45425 – Trial Testimony Qualified as Security Best Practices Expert (D)
- De Los Santos V. Weith Superior Court for the State of California, County of San Francisco Case No. CGC 19-578634 Deposition Case Settled (P)
- Hurley v. Nevada Property d/b/a Cosmopolitan Case No A-21-8344560-C – Superior Court Clark County Deposition Report (P)
- Hector Hernandez v. City of Fullerton Case No. 8:20-CV-01747-CJE-JDE Rule 26 Report Deposition (P)
- Munger Toles and Olsen – *Vanessa Bryant v. County of Los Angeles (Police and IA Best Practices)*
- Charlson, Bredehoft, Cohen & Brown *Heard v. Depp (Police Best Practices)*
- Stream Kim Wicks Wrage and Alfaro *Chavez v. City of Vernon (Police Internal Affairs)*
- Cheong, Denove & Rowell – *Fear v. Exeter Trial Plaintiff Verdict (July 2021) (K9 Best Practices)*
- Law Offices of Keith Knowlton – *Upson v. City of Phoenix (K9 Best Practices)*
- Moregenstern Law Firm-Wence v. Cruz (Use of Force)
- Glasser Weil *Gross v. Gross (Expert – Private Investigations Best Practices)*
- Covington and Burling *Sands v. District of Columbia*
- Howard & Howard *Dauris v. Henderson NV (Use of Deadly Force)*
- City of San Diego *Mya Hendrix v. City of San Diego ( Kidnap Investigations Best Practices)*
- Johnson v. Caesars Palace *(Premise Liability)*
- Kramer, DeBoer & Keane *(Security Guard Operations)*
- Law Offices of Michael Mills *Hunnicutt v. MARTA (Crime Foreseeability)*
- Law Offices of Patrick Buelna McCoy v. Vallejo *(Shooting Policy – Use of Deadly Force)*

Exhibit 2

Page 1 of 2

# Expert Cases – Deposition, Report & Trial Testimony (Details Upon Request)

### (continued)

- Law Offices of Will Macke *Hartt v. City of Keizer (K9 Best Practices)*
- Littler Mendelson P.C *Henry v. Anchorage (Expert – Brady-Police Internal Affairs / Misconduct)*
- Richard A. Criummo & Associates *(Police Tactics – Officer Involved Shootings – Pursuit Policy)*
- Richards Watson *Gershon Contreras v. City of Compton (Police Investigation Best Practices)*
- Selman Breitman LLP *Gittler v. Midjt Market (Premise Liability)*
- Law Officers of Mary Schultz Thurman v. Spokane *(Police Internal Affairs)*
- Heath and Yuen- *Santos v. Weith* (Security Guard Operations)
- Hall Griffin-*Johnl.L. Doe v. Mi Ju Security (Security Guard Best Practices)*
- Hamparyan Personal Injury-*Celani v. Westfield Corporation (Premise Liability)*
- Law Offices of John Buris-*Hart v. City of Redwood (Deadly Force)*

# Professional Synopsis

TITAN NATIONAL CONSULTING, LLC                                          2012 – PRESENT
*Police Consulting, Expert & Investigative Company*
**Owner** | **Consultant** | **Senior Investigator**

CRITICAL SOLUTIONS PROTECTIVE SERVICES GROUP                              2010 – 2017
*Los-Angeles-Based Security Company*
**CEO**

LOS ANGELES POLICE DEPARTMENT                                           1982 – 2012
*Rapidly Advanced to Roles of Greater Accountability & Responsibility Due to Performance Excellence; Recipient of 50 Bureau / Major Commendations and 300+ Area Commendations; Recipient of the Police "Medal for Bravery" (1993) and Police "Meritorious Unit Citation" (1994) by the Los Angeles Police Department (LAPD).*

*Robbery – Homicide Division, Homicide Special Section*
**Lieutenant II** | **Officer-in-Charge** (2011 – 2012)

*Robbery – Homicide Division, Special Investigation Section*
**Lieutenant II** | **Officer-in-Charge** (2003 – 2011)

*Major Crimes Division, Criminal Investigation Section*
*Joint Terrorism Task Force – Surveillance Special Section*
**Lieutenant II** | **Officer-in-Charge** (2002 – 2003)

*Burglary – Auto Theft Division, Field Enforcement Section*
*Federal Theft Task Force*
**Lieutenant II** (2000 – 2001)

*North Hollywood Area*
**Lieutenant I** | **Watch Commander** | **Mobile Field Force Leader** (1999 – 2000)

*Internal Affairs Division, Advocate Section*
**Sergeant II** (1998 – 1999)

*Van Nuys Area*
**Sergeant II** | **Watch Commander** | **Assistant Watch Commander** (1996 – 1998)

*West Los Angeles Area*
**Sergeant II Vice Supervisor** ( 1995-1996)

*Operations West Bureau CRASH*
**Sergeant I** (1994 – 1995)

*77th Street Area*
**Sergeant I** (1993 – 1994)

*Metropolitan Division*
**Police Officer III** | **K9 Handler** (1989 – 1993)

*Metropolitan Division*
**Police Officer III** (1987 – 1989)

*Wilshire Area*
**Police Officer III** | **Field Training Officer** (1985 – 1987)

*Operations West Bureau CRASH*
**Police Officer II** | **Gang Suppression Officer** (1985)

*Wilshire Area*
**Police Officer II** (1984 – 1985)

*Foothills Area*
**Police Officer I** (1982 – 1984)

# Education & Professional Development

**Bachelor of Arts in English Literature**                          CLAREMONT MCKENNA COLLEGE
**Certifications – Basic** | **Intermediate** | **Advanced** | **Supervisor** | **Management**          CALIFORNIA POST

**Excellent Professional References Provided Upon Request**

Exhibit 2
Page 2 of 2

# Mallik N. Tella, MD, FAAOS

Orthopaedic Surgery and Sports Medicine
5103 Utah Street
Vancouver, WA 98661

Kafoury & McDougal
411 SW 2nd Ave #200
Portland, OR 97204

September 06, 2023

RE: Christopher Garza
DOB (07/24/1974)

Dear Mr. Jason Kafoury:

I had the pleasure of seeing Mr. Garza on 09/06/2023 for injuries sustained during an incident with a police officer on 09/17/2021.

As a matter of this evaluation, I reviewed the following records: Hope Orthopaedics, Salem Health, Willamette Surgery Center, Salem Pain and Spine, Salem Rehab Associates, Saint Moscati Community Health, Lancaster Family Health, Mr. Garza's deposition, Video of Mr. Garza's arrest, and Dr.Richard Tobin's opinion letter.  In addition to plaintiff's exhibits, I may also rely on general anatomical diagrams in my testimony.

<u>History</u>
On 09/17/2021, Mr. Garza was approached and arrested by a police officer as he was looking under the hood of a vehicle. Mr. Garza was living in an RV at the shop where this vehicle was parked. He was with the owner of the vehicle and another individual. During the arrest, Mr. Garza states that his Right arm was placed behind this back, and the officer forcibly pushed his arm superiorly and rotated it such that his hand moved towards the back of his contralateral shoulder. He had immediate and significant pain as well as felt a tearing sensation in his Right shoulder. He rated his pain as greater than 10/10. He mentioned this injury to the officer and was offered an ambulance, but he declined. He instead went to see his primary care physician the next day.

In the past, Mr. Garza has had cervical spine pain that radiated to his Bilateral shoulders since 2014. This was treated with epidural steroid injections and surgery on his cervical spine in 2015. Additionally, he has had intermittent complaints of both Right and Left shoulder pain in the past. Each of these previous shoulder episodes could be related to sleeping on his shoulder awkwardly or pain after heavy use.  These episodes of shoulder pain resolved quickly and without the need for formal treatment. He simply used NSAID and rest.

The pain that Mr. Garza experienced on 09/17/2021 was very different than any he had experienced before. The pain was both posteriorly and anteriorly located. It was associated with popping, clicking,

Exhibit 3
Page 1 of 3

and mechanical symptoms within the shoulder. He had difficulty even raising his arm overhead or past 90degrees of forward elevation. Ultimately, Mr. Garza had an MRI Arthogram on 10/29/2021 that demonstrated a nondisplaced Superior labral tear that extended posteriorly and was associated with a multiloculated paralabral cyst (SLAP Tear). On 12/07/2021, he underwent a Right shoulder arthroscopy with debridement of SLAP tear, subacromial decompression, and cyst trephination by Dr. Richard Tobin. He underwent one session of postoperative physical therapy and continued with home physical therapy after that. He has not sought any formal treatment for his Right shoulder after that.

<u>Current Presentation</u>
Today, Mr. Garza complains of baseline 0/10 pain at rest that worsens to 8/10 pain with such activities as working as a barber and doing yardwork. He complains of some loss of motion and weakness in his shoulder compared to his preinjury state. He has clicking and a catching sensation within the shoulder. Recreationally, he previously played basketball nearly daily and frequently threw baseballs. He is unable to do either one today.  He is riding his bike for exercise.  At work, he has had to decrease the number of haircuts per hour from 5/hour to 1.5-2/hour due to his pain and symptoms in his shoulder. Overall, he rates his level of function as 65-80% of preinjury levels.

<u>Injuries Sustained from 09/17/2021 Motor Vehicle Accident:</u>
1.  Right shoulder Superior Labrum Anterior Posterior Tear with paralabral cyst.

<u>Pertinent Imaging:</u>
<u>10/29/2021 MRI Arthrogram Right Shoulder:</u> Nondisplaced Superior labral tear that extends posteriorly to the posterosuperior labrum (SLAP tear) and has an associated multiloculated paralabral cyst in this region. The presence of this cyst is a strong diagnostic clue that the SLAP tear is present as joint fluid is going through the tear and creating this MRI visible cyst.

<u>Pertinent Physical Exam</u>
Right shoulder
Notable/Pertinent findings on the physical exam include:
Normal shoulder contour with no step off or deformity noted. Well healed surgical incisions.
There is tenderness to palpation at the proximal biceps as well as the posterior subacromial bursa.

| | | Right | Left |
|---|---|---|---|
| ROM: | Forward Elevation | 160 | 170 |
| | Abduction | 110 with pain and clunk | 160 |
| | Adduction | 20 | 35 |
| | Ext Rot @side | 50 | 50 |
| | Int Rot @90 | 30 | 45 |
| | Extension | 30 | 45 |
| Strength: | C4 to T1 | 5/5 | 5/5 |
| | Sensation: Intact from C4 to T1 | | |

Specific Tests Left Shoulder:
    Positive: Neer, Speed's, Mayo Sheer, Obrien's, Crank Test, Hawkins, Yergason's
    Negative:  Apprehension/Relocation test, Sulcus, Jerk (+pain), lift off, Jobe's, External Rotation Lag
Brisk Capillary refill
C-Spine: Negative Spurling's.

Exhibit 3
Page 2 of 3

<u>Impression:</u>

1. Mr. Garza has undergone appropriate post-incident injury treatment and rehabilitation with no excessive treatment rendered Right shoulder Superior Labrum Anterior Posterior Tear with paralabral cyst.

2. SLAP tears can be acute or chronic injuries. The typical mechanisms of injury may be from throwing sports, falling back onto an outstretched hand, landing directly on the shoulder, or as in this case, a forced elevation at the glenohumeral joint with the arm extended and adducted.

3. Future: While the surgery that Mr. Garza had was reasonable and appropriate, he is still having significant symptoms. His history and physical exam are consistent with continued pain from <u>1. SLAP tear and 2. Shoulder Impingement syndrome</u>. I would rate his level of disability as moderate. Currently, I recommend a multistep approach to helping Mr. Garza achieve a more functional and pain-free shoulder.

   A. Perform a subacromial injection and formal physical therapy to help address pain related to impingement syndrome of the shoulder.

   B. If A. above fails to relieve his symptoms, he should undergo a repeat Right shoulder arthroscopy with Biceps tenodesis/tenotomy with/without SLAP repair with/without revision subacromial decompression. He did not undergo either biceps tenodesis/tenotomy or SLAP repair at the time of his original surgery. These procedures are the next steps in patients who have failed a SLAP tear debridement surgery. In my experience as a shoulder surgeon with >1000 shoulder surgeries performed, and many more patients evaluated for shoulder pain; Mr. Garza will in all medical probability will need this surgery in the future.

   C. The additional cost of palliative treatment and the Right shoulder arthroscopy procedure with postoperative rehabilitation will be more than $50,000-$60,000.

4. Federal Court Specific information **FRCP 26(a)(2)(B).**

   A. Please see attached Resume for my training, qualifications, and publications.

   B. I've been retained as an expert witness in the following cases:
      i. *Julia Monaco vs Costco Wholesale Corporation, et al.*, Multnomah County Circuit Court Case No. 18CV24341
      ii. *Otoniel Madera Orozco vs. Martha Susan Lushenko*, Marion County Circuit Court Case No. 21CV30379
      iii. *Victor Kolbe v. Dennis Miller, et al.,* Clark County Superior Court Case No. 21-2-02075-06.
      iv. *Wayne Slagle vs Lund Enterprise Group, LLC, et al.*, Multnomah County Circuit Court Case No. 18CV01268

   C. My usual and typical charges are $500/hr for time spent in preparation, examination, report writing, depositions, or testifying in court.

Please contact me with any questions or concerns.
  Warm Regards,

Mallik Tella, MD
alletMT@yahoo.com

Exhibit 3
Page 3 of 3

# Mallik N. Tella, M.D.

## GENERAL

Email: alletMT@yahoo.com   Phone: 312-203-3450
License:   Current State of Oregon and Washington Medical Licensure

## EDUCATION

| | | |
|---|---|---|
| Stanford University | | Palo Alto, CA |
| | Sports Medicine and Arthroscopic Surgery Fellowship | |
| University of Missouri-Columbia | | Columbia, MO |
| | Orthopaedic Surgery Residency | |
| Northwestern University Feinberg School of Medicine | | Chicago, IL |
| | *Medical Doctorate* May 2005 | |
| | 2002- Benjamin Hoyt Scholarship from NUFSoM | |
| | 2002- Buehler Research Award | |
| 1998 – 2001 | Northwestern University | Evanston, IL |
| | *Bachelor of Arts*, **Economics, Biological Sciences** | |

## EXPERIENCE

| | | |
|---|---|---|
| 2022 | Locums Orthopaedic Surgeon | Vancouver, WA |
| 2011- 2022 | Adventist Health Medical Group | Portland, OR |
| 2010- 2011 | Team Orthopaedic Physician for the San Francisco 49ers | Santa Clara, CA |

### Research
Accelerated versus Conservation Rehabilitation for All-inside Meniscal Repair: In press
Sports Injuries in Bicyclists: Book chapter submitted for publication

### Publications
Hurwit D, Fanton F, Tella MN, Behn A, Hunt KJ. *Viscoelastic Properties of Common Suture Material Used for Rotator Cuff Repair and Arthroscopic Procedures.* **Arthroscopy.** 30 (11): 1406-12. 2014

Ali MJ, Bendok BR, Tella MN**,** Getch CG, Batjer HH. *Arterial reconstruction by direct surgical clipping of a basilar artery dissecting aneurysm after failed vertebral artery occlusion: technical case report and literature review*. **Neurosurgery**. 52(6):1475-80. 2003

Tella MN, Feinglass J, Chang RW. *Cost-effectiveness, Cost-Utility, and Cost-Benefit studies in Rheumatology: A Review of the Literature.* **Current Opinion in Rheumatology** 2003, 15:127-131.

Parkins RJ, Tella MN, Bendok BR, Ondra SL. *Percutaneous Kyphoplasty.* **Neurosurgery 2005**

## CERTIFICATES AND PROFFESIONAL MEMBERSHIPS
Advanced Cardiac Life Support; Basic Life Support
American Academy of Orthopaedic Surgeons;
Arthroscopy Association of North America; American Orthopaedic Society for Sports Medicine

Exhibit 4
Page 1 of 1

GREGORY KAFOURY
MARK MCDOUGAL
JASON KAFOURY
ADAM KIEL

## KAFOURY & MCDOUGAL
### LAWYERS FOR THE PEOPLE

www.kafourymcdougal.com
503-224-2647

LAURIE OSBORN, Paralegal
osborn@kafourymcdougal.com
503-224-2673 (Fax)

June 1, 2022

Richard W. Tobin, MD
Hope Orthopedics of Oregon
1600 State St
Salem OR 97301-4257
Fax: (503) 540-6349

VIA FAX

Re:   Our Client: Christopher Garza
      DOI:    9/17/21
      DOB:    7/24/74

Dear Dr. Tobin:

Thank you for speaking with me recently regarding Mr. Garza's case. Your chart notes indicate you evaluated and treated Mr. Garza for right shoulder pain that began after a physical encounter with a police officer on September 17, 2021.

In follow up to our telephone conversation, below are specific questions/statements in relation to Mr. Garza I would like to confirm. I ask you address each question/statement to a reasonable degree of medical probability.

1. Mr. Garza reported to you that he had bilateral shoulder pain that began after the September 17, 2021 incident. You sent him for a right shoulder MRI, which demonstrated a labral tear and a possible hole or tear in the rotator cuff. You performed surgery on December 7, 2021 on the right shoulder, which included a significant debridement of the labrum, drilling and draining of a paralabral cyst, ~~repair of a~~ *debridement of* small rotator cuff tear, and removal of a portion of bone to make room for the rotator cuff. Is that correct?

\_\_\_\_✓\_\_\_\_ Yes _____ No

Comments:

411 SW Second Avenue, Suite 200, Portland, Oregon 97204

Exhibit 5
Page 1 of 2

adare Williamson st1827port15          (3/3) 06/02/2022 04:35:14 PM -0700

To: Richard Tobin. MD     ....      Page: 2 of 2      2022-06-01 23:12:10 GMT      1-503-914-1440      From: Mark McDoug

2. Based on Mr. Garza's past medical history, you believe that Mr. Garza had some pre-existing right shoulder pathology. In your medical opinion, Mr. Garza's right shoulder problems were exacerbated by the September 17, 2021 incident and that given the mechanism of injury, the acute shoulder injuries and the need for surgery were more likely than not the result of the September 17, 2021 incident. Is that correct?

___✓___ Yes _____ No

> Comments:

3. You also believe that all medical treatment to Mr. Garza's right shoulder and billing therefore in the period between September 17, 2021 and the December 7, 2021 surgery, as well as treatment in the 6-month period after the surgery was reasonable and necessary for treatment of the injuries caused by the September 17, 2021 incident. Is that correct?

___✓___ Yes _____ No

> Comments:

Sincerely,

*Adam Kiel*

Adam Kiel

AK/ljo

I agree with the opinions stated above:

SIGNED: _____ Date: __6/1/22__
        Richard W. Tobin, MD

411 SW Second Avenue, Suite 200, Portland, Oregon 97204

Exhibit 5
Page 2 of 2

# Richard W Tobin, MD

## DEMOGRAPHICS

| | |
|---|---|
| Mailing Address | 1600 State Street, Salem OR 97301 |
| Telephone | 503-540-6300 |

## PROFESSIONAL EDUCATION

| | |
|---|---|
| 1987-1991 | US Navy, Naval Hospital, San Diego, CA<br>Orthopedic Surgery Resident |
| 1984-1985 | US Navy, Naval Hospital, San Diego, CA<br>General Surgery Internship |
| 1980-1984 | Jefferson Medical College, Philadelphia, PA<br>Medical Doctorate |
| 1980 | Dartmouth College, Hanover NW<br>Bachelor of Arts |

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 01/2006- Present | Hope Orthopedics of Oregon, Salem, OR |
| 01/1994 to 12/2005 | Orthopedic Associates, Salem, OR |

## BOARD CERTIFICATION and LICENSURE

American Board of Orthopedic Surgery, Certified July 15, 1994
Oregon Medical License #MD18553

## MEMBERSHIPS and SOCIEITES

Member, American Academy of Orthopaedic Surgeons
Marion-Polk County Medical Society
Mid-Valley Independent Physicians Association
Oregon Medical Association

Exhibit 6
Page 1 of 1

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **PLAINTIFF'S FRCP 26(a)(2) EXPERT DISCLOSURES** on the defendant(s) on the date indicated below by the following method:

☐ mailing with postage prepaid
☐ hand delivery
☐ facsimile transmission
☐ overnight delivery
☒ email

to said person(s) a true copy thereof, addressed to said persons at their last known address(es) and facsimile number(s) as follows:

Sebastian Tapia
Salem City Attorney's Office
555 Liberty St SE, Ste 225
Salem OR 97301
stapia@cityofsalem.net
mhighsmith@cityofsalem.net
rgostevskyh@cityofsalem.net

*Attorneys for Defendants*

Dated this 29th day of September, 2023.

KAFOURY & MCDOUGAL

*/s/ Jason Kafoury*
Jason Kafoury, OSB #091200
jkafoury@kafourymcdougal.com
Of Attorneys for Plaintiff

**KAFOURY & McDOUGAL**
411 SW 2nd. Ave. Ste. 200
Portland, OR 97204
Fax: 503-224-2673
Phone: 503-224-2647