IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER GARZA,
an individual,

                Plaintiff,

    v.

CITY OF SALEM, an Oregon municipal
corporation; and OFFICER DAVID
BAKER, an individual,

                Defendants.

No. 3:22-cv-00721-HZ

OPINION & ORDER

Gregory Kafoury
Jason Kafoury
Mark Gillis McDougal
Adam Kiel
Kafoury & McDougal
411 SW 2nd Ave Ste 200
Portland, OR 97204

      Attorneys for Plaintiff

Sebastian Tapia
City of Salem Legal Department
555 Liberty St SE Ste 225
Salem, OR 97301

      Attorney for Defendants

HERNÁNDEZ, District Judge:

      Defendants the City of Salem and Officer David Baker move for a new trial or, in the alternative, to reduce the award of punitive damages against Defendant Baker on Plaintiff's excessive force claim and the award of compensatory damages against the City of Salem on Plaintiff's state-law false arrest claim. Def. Mot., ECF 123. For the following reasons, the Court grants the motion in part and denies it in part.

## BACKGROUND

      The parties are familiar with the facts, and the Court will only address them briefly here. On May 17, 2022, Plaintiff Christopher Garza sued Defendants, bringing claims for excessive force and false arrest under 42 U.S.C. § 1983 against Defendant Baker, and state-law claims for false arrest and battery against the City of Salem. Compl., ECF 1. The claims arose out of Defendant Baker's detention of Plaintiff at the tire shop where Plaintiff parked his trailer. The Court granted summary judgment to Defendant Baker on the federal false arrest claim based on qualified immunity, and the other three claims proceeded to trial. Trial was held from November 7-9, 2023. The jury returned a verdict for Plaintiff on all three claims. ECF 97. It awarded Plaintiff $150,000 in economic damages and $500,000 in noneconomic damages on his excessive force and battery claims. *Id.* It awarded $2,000,000 in punitive damages against Defendant Baker on the excessive force claim. *Id.* And it awarded $500,000 in noneconomic damages on the state-law false arrest claim. *Id.* On December 14, 2023, the Court entered judgment, allocating the compensatory damages jointly awarded on the excessive force and

battery claims to the excessive force claim as Plaintiff desired. ECF 105. *See also* ECF 104. Defendants now timely move for a new trial, or in the alternative to reduce the award of punitive damages and the award of damages on the false arrest claim.

## STANDARDS

Under Rule 59, a district court has the discretion to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Because "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," courts are "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). The Ninth Circuit has previously held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citation omitted). A new trial may also be granted if "the damages are excessive." *Id.*

> Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty ... to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence.

*Id.* (internal quotations omitted). The authority to grant a new trial is "confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980).

## DISCUSSION

I. **New Trial**

Defendants argue that a new trial should be granted based on arguments Plaintiff's counsel made during closing argument. Def. Mot. 6. During closing, counsel for Plaintiff stated:

> Punitive damages is a different type of damage, and this is what you, as the community, get to decide if you find excessive force. You get to say we can send a message to the City of Salem, Officer Baker: We, as a community, aren't okay with this, we're not okay that nobody investigated this.

Tapia Decl. Ex. 2 at 3 (Pl. Closing Arg. Tr.) 33:11-15, ECF 124. Defendants objected to the argument, and the Court sustained the objection. *Id.* at 33:17-19.

In rebuttal closing, counsel for Plaintiff described the manner in which force was used against Plaintiff and then stated:

> That's what Officer Baker did. He didn't know he was being videotaped. And now, you, the community, get an opportunity to let the community decide if that's what we're going to allow our officers in our state to do.
> You have a lot of power in your hands, community. I'm going to – we'll see what you guys decide.

Tapia Decl. Ex. 2 at 4 (Pl. Rebuttal Closing Arg. Tr.) 41:16-21.

"Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1994)).

> In evaluating the likelihood of prejudice from the comments, we should consider the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself.

*Id.* at 1193 (internal quotations omitted).

Defendants point out that Plaintiff only ever sought punitive damages against Defendant Baker, and the Court granted Defendants' motion in limine to exclude calls to action. Def. Mot. 2-3. They argue that "[t]he amount of the award was likely based on Plaintiff's counsel's attempt to cause the jury to believe that a punitive award needed to be large enough to get Salem Police Department's attention, even though Plaintiff pled and understood that the punitive award was

for Officer David Baker's conduct." *Id.* at 6. And they state that Plaintiff should have known that the City had no duty to pay for a punitive damage award, but the jury would not have known this. *Id.* Defendants state, "No reasonable juror would believe that a city police officer would be able to pay a punitive award of two million dollars." *Id.* Defendants conclude that "the jury was misled to believe that the punitive award was against the Salem Police Department for failing to investigate Officer Baker's use of force rather than focusing on Officer Baker's conduct as an individual." *Id.*

Plaintiff concedes that counsel's reference to sending a message to the City of Salem was improper, but states that it was a brief mistake, noting that it "was immediately followed by a reference to Officer Baker," and that Defendants' objection to the reference was sustained. Pl. Resp. 3-4, ECF 128. Plaintiff also argues that it was proper to state that the "community" had the opportunity to decide what should happen, and to reference a failure to investigate the incident. *Id.* at 4. Plaintiff points to his expert's testimony that Defendant Baker's 20 use of force reports in seven months was "a lot" to show that the evidence supported a large award of punitive damages based on Defendant Baker's conduct. *Id.* Finally, Plaintiff observes that Defendants submitted no evidence of Defendant Baker's wealth, and that the jury instructions and verdict form specified that punitive damages could be assessed only against Defendant Baker. *Id.* at 4-5.

The Court agrees with Plaintiff that Defendants have not shown an adequate basis for a new trial. While counsel's reference to sending a message to the City of Salem was improper, the reference was not significant enough to permeate the trial with misconduct. Counsel for Defendants objected to the reference, the Court immediately sustained the objection, and closing argument proceeded. In rebuttal closing, counsel for Plaintiff focused his argument on Defendant Baker's conduct. These circumstances do not support a finding that the trial was permeated with

misconduct. *See Hemmings*, 285 F.3d at 1194-95 (holding that plaintiff's counsel's improper comments about prior lawsuits against the defendant during closing argument did not justify a new trial because the reference was isolated and the plaintiffs had a strong case).

Defendants' argument also relies on suppositions not supported by the record. As Plaintiffs point out and Defendants concede on reply, there was no evidence in the record about Defendant Baker's ability to pay an award of punitive damages. Def. Reply 6, ECF 130. Nor was there evidence of whether the City would be obligated to pay the award on his behalf. There is no reason to conclude that the jury considered those factors in reaching its verdict. Finally, the evidence in the record included a video of the incident, testimony from Plaintiff and other witnesses about how the incident affected him, and evidence of damage to Plaintiff's shoulder that would require surgery. The Court is not left with the conviction that the reference to sending a message to the City, rather than Defendant Baker, led to the large award of punitive damages. Defendants have not shown that they are entitled to a new trial.

## II.    Remittitur

In the alternative, Defendants move to reduce the punitive damages award and the award of noneconomic damages for the false arrest claim. Def. Mot. 1-2. The Court concludes that Defendants are entitled to a reduction of the punitive damages award but not the damages award on the false arrest claim.

### A.    Punitive Damages on Excessive Force Claim

A new trial may be granted if "an award of damages is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork, and gives rise to an inference that passion and prejudice tainted the jury's finding of liability." *Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Loc. No. 287*, 175 F.3d 680, 689 (9th

Cir. 1999), *amended*, No. 96-15267, 1999 WL 34967384 (9th Cir. June 3, 1999) (internal quotations and citation omitted). The court "should determine whether a punitive damage award exceeds the amount necessary to accomplish the goals of punishment and deterrence in deciding whether it is grossly excessive." *Morgan v. Woessner*, 997 F.2d 1244, 1258 (9th Cir. 1993). The Due Process Clause "'prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.'" *S. Union Co. v. Irvin*, 563 F.3d 788, 791 (9th Cir. 2009) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)). To determine whether an award of punitive damages is grossly excessive, the Supreme Court

> has pointed to three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."

*Id.* (quoting 538 U.S. at 418). The first guidepost is the most important. *Id.*

If the court determines that the damages are grossly excessive, it must give the party awarded those damages "the option of either accepting the remittitur of the punitive damage award or a new trial on that issue." *Morgan*, 997 F.2d at 1258-59. The court must review the evidence of damages in the light most favorable to the prevailing party. *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1387 (9th Cir. 1987).

The jury awarded Plaintiff $650,000 in compensatory damages on his excessive force claim: $150,000 in economic damages and $500,000 in noneconomic damages. It awarded Plaintiff $2 million in punitive damages. Thus, the ratio between punitive and compensatory damages was approximately 3:1. Defendants initially suggest that the ratio was 13:1 because they include only the economic damages in their calculations. Def. Mot. 8-9. But the

noneconomic damages are also compensatory. Defendants concede on reply that the ratio here is 3:1. Def. Reply 5.

The Ninth Circuit found a 3:1 ratio of punitive to compensatory damages acceptable in *Southern Union*. 563 F.3d at 792. In that case, the Ninth Circuit found few indicia of reprehensibility: harm "was not to some poor struggling person; it was inflicted upon a very large company"; "the harm was not physical"; the company "was not financially vulnerable"; and "the incident was isolated." *Id.* at 791-92. Here, in contrast, the evidence at trial showed that Plaintiff was unarmed and was not violating any laws and yet was detained by Defendant Baker, who placed him in handcuffs. Plaintiff testified that Defendant Baker wrenched his arms and punched him while he was detaining him, and that he felt insulted and frightened by the encounter. The evidence indicated that Plaintiff faced past and future medical bills from injury to his shoulder sustained in the incident and that he would require surgery. As Plaintiff argues, the jury could have reasonably concluded that Defendant Baker acted in a manner intended to inflict pain. Pl. Resp. 2-3. The evidence supported a finding that Defendant Baker's conduct was reprehensible.

On the other hand, Defendant Baker did have reasonable suspicion to stop Plaintiff, and Plaintiff was uncooperative with Defendant Baker's attempts to investigate. And Plaintiff improperly relies on his use-of-force expert's testimony that Defendant Baker had a history of use-of-force reports. *See* Pl. Resp. 3; McDougal Decl. Ex. 1 at 2 (Direct Exam. of Adam Bercovici Tr.) 14:8-21, ECF 129. There was no evidence in the record about the circumstances underlying those reports, the degree of force used, or whether it was found to be justified. The testimony improperly invited the jury to speculate about Defendant Baker's past use of force. This evidence does not properly support a finding of reprehensibility. The degree of

8 – OPINION & ORDER

reprehensibility here was greater than in a case such as *Southern Union*, but it was not of the highest order.

The Supreme Court has explained that "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Campbell*, 538 U.S. at 425.[1] The compensatory damages on the excessive force claim were $650,000, an amount the Court deems substantial in this case. Further, $500,000 of those damages were for noneconomic harm. The evidence at trial supporting an award of noneconomic damages was testimony from Plaintiff and others that Defendant Baker's conduct caused him emotional distress. The Supreme Court has explained that compensatory damages for emotional distress serve one of the purposes of punitive damages, which is to condemn conduct that causes outrage and humiliation. 538 U.S. at 426. This further suggests that the award of punitive damages is excessive. In sum, the first two guideposts support a reduction of the punitive damages in this case.

For the third guidepost, Defendants first rely on several cases with claims for battery or excessive force, all of which involve the actions of police officers responding to protests. Def. Mot. 9-10. They state that the cases "involved an officer's use of a weapon, and none resulted in a punitive award." *Id.* at 9. The Court concludes that the cases are not useful here because this case did not involve a protest or circumstances similar to a protest, which requires officers to respond to rapidly changing circumstances in large crowds of people. The appropriate use of

---

[1] Plaintiff argues that the guideline ratios set by the Supreme Court are irrelevant when the plaintiff suffers physical injury. Pl. Resp. 5 (citing *Goddard v. Farmers Ins. Co. of Oregon*, 344 Or. 232, 260 (2008)). Plaintiff is incorrect. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 975 (9th Cir. 2021) (considering the 1:1 ratio guideline in a case with over $5 million in compensatory damages and concluding that a higher ratio was justified because the defendant corporation's product gave the plaintiff cancer, and the defendant intentionally downplayed calls to test the carcinogenic risks of the product).

force—and, by extension, the egregiousness of excessive use of force—at a protest is not a guide for this situation. Defendants also rely on a state-law case in which the plaintiff was awarded $50,000 in punitive damages on a false arrest claim, and ask that the Court reduce the award of punitive damages in this case to $50,000. Def. Mot. 9, 11. That case is not a useful guide either because the claims were brought under state law in state court. Federal law governs the award of punitive damages here. On the other hand, as Defendants point out, Plaintiffs cite no cases upholding a similar award of punitive damages on comparable facts. Def. Reply 5.

The Court concludes that comparison to other cases indicates that the award of punitive damages is excessive. In *Binkovich v. Barthelemy*, the Ninth Circuit reinstated the award of punitive damages on an excessive force claim against a police officer who pushed the plaintiff against a wall and then swept his legs out from under him without warning. 672 F. App'x 648, 650-51 (9th Cir. 2016). The level of reprehensibility of that conduct is comparable to the level of reprehensibility in this case. The jury in *Binkovich* awarded the plaintiff $45,000 in compensatory damages and $45,000 in punitive damages. Verdict, *Binkovich v. Barthelmy*, No. 5:11-cv-03774-EJD. In *Hunter v. City of Federal Way*, the Ninth Circuit upheld the award of punitive damages on an excessive force claim against a police officer who placed the plaintiff in a chokehold while arresting him for trespassing after the plaintiff cooperated with the officer's orders. 806 F. App'x 518, 521-22 (9th Cir. 2020). That case presents somewhat more reprehensible facts than the case before this Court. The jury awarded the plaintiff in *Hunter* $40,000 in compensatory damages and $600,000 in punitive damages. Verdict, *Hunter v. City of Fed. Way*, No. 2:16-cv-01445-MJP. The district court reduced the award of punitive damages to $360,000. Order, ECF 143, *Hunter v. City of Fed. Way*, No. 2:16-cv-01445-MJP. The Ninth

Circuit affirmed. 806 F. App'x at 521-22. These cases support a reduction of the punitive

damages award, but not to the $50,000 Defendants initially request.

On reply, Defendants suggest in the alternative that the third guidepost be evaluated by

considering the maximum criminal penalties authorized for comparable misconduct. Def. Reply

5-6. The Supreme Court has indicated that legislative judgments about the appropriate sanctions

for the conduct at issue should be accorded "substantial deference." *BMW of N. Am., Inc. v.

Gore*, 517 U.S. 559, 583 (1996) (internal quotations omitted). Defendants suggest that Assault in

the Third Degree under Oregon law is the applicable criminal standard. Def. Reply 6. They state

that the associated maximum fine is $125,000. *Id.* (citing O.R.S. 163.165). Defendants raised this

argument for the first time on reply, and Plaintiff had no opportunity to respond. The Court

declines to address the argument.

The Court concludes that the award of $2 million in punitive damages is grossly

excessive. Given the degree of reprehensibility of Defendant Baker's conduct and the amount

and nature of the compensatory damages awarded on Plaintiff's excessive force claim, a punitive

damages award greater than $650,000 is inconsistent with due process. A larger award exceeds

the amount necessary to achieve the goals of punishment and deterrence. On reply, Defendants

request a reduction of the award to $650,000, rather than the $50,000 they previously advocated.

Def. Reply 7. The Court grants Defendants' modified motion to reduce the punitive damages

award, and reduces the award to $650,000. Plaintiff must either agree to remit the punitive

damages in excess of $650,000 or request a new trial on punitive damages. The Court will give

Plaintiff fourteen days to notify the Court in writing of his election.

//

//

B.    Damages on False Arrest Claim

Plaintiff was awarded compensatory damages on his state-law false arrest claim. State law governs the determination of whether the damages award was excessive. *See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278-79 (1989) (so holding for an award of punitive damages on a state-law claim); *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 419, 435 n.18 (1996) (so holding for review of compensatory damages). Whether the award is excessive is a matter of state law. *Browning-Ferris*, 492 U.S. at 279 (declining to craft federal common law on excessiveness). The district court should apply state standards of review in evaluating the size of the jury's award of compensatory damages if applying the federal standard of review would result in substantial variations between state and federal money judgments. *Gasperini*, 518 U.S. at 419, 430 (holding that federal district court should apply stricter standard of review of jury awards prescribed by New York statute on state-law claim rather than the federal standard on excessiveness of jury awards).

The jury awarded Plaintiff $500,000 in damages on his state-law false arrest claim, all of which were noneconomic damages. Under Oregon law, noneconomic damages may be awarded to compensate the plaintiff for "injury to his feelings, mental anguish, humiliation, and the like[.]" *Busch v. McInnis Waste Sys., Inc.*, 366 Or. 628, 645, 468 P.3d 419 (2020) (internal quotations omitted). The Oregon Constitution limits a court's discretion to reduce an award of damages: "[n]o fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict." Or. Const. art. VII, § 3. The Oregon Supreme Court has interpreted this clause to provide that Oregon courts cannot declare that the evidence does not support the verdict simply because the verdict is too large. *Van Lom v. Schneiderman*, 187 Or. 89, 104, 210 P.2d 461 (Or. 1949), *overruled in part on*

*other grounds by Oberg v. Honda Motor Co.*, 320 Or. 544, 888 P.2d 8 (1995); *Trebelhorn v.*

*Prime Wimbledon SPE, LLC*, 372 Or. 27, 34 (2024). Because the application of the federal

standard rather than the Oregon standard is likely to result in substantial variations in money

judgments, the Oregon provision is substantive and should be applied, consistent with *Gasperini*.

Therefore, the award of damages on Plaintiff's false arrest claim is excessive only if no evidence

in the record supports the verdict.[2] *Accord VanValkenburg v. Oregon Dep't of Corr.*, No. 3:14-

CV-00916-MO, 2017 WL 532950, at *5 (D. Or. Feb. 8, 2017); *Allison v. Smoot Enterprises Inc.*,

No. 2:17-CV-01598-SU, 2019 WL 5095779, at *7 (D. Or. Oct. 11, 2019) (following

*VanValkenburg*).

  Defendants state that the award on the false arrest claim "appears to be duplicative of the

award for unlawful force" and "is excessive compared to any recent, similar jury verdict,

amounting to forty times the closest comparable case." Def. Mot. 2. Defendants argue that the

award is duplicative because the jury awarded the same amount of noneconomic damages on the

battery and false arrest claims. Def. Reply 3-4. The Court declines to find the award duplicative.

The jury was instructed on the distinct elements of a claim for false arrest under Oregon law, and

the verdict form separated the claim from Plaintiff's claims for excessive force and battery.

Defendants point to no error in the jury instructions. The Court presumes that the jury followed

the instructions, *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009), and finds that the

presumption is not rebutted simply because the jury awarded the same amount of noneconomic

---

[2] The Supreme Court has held that applying this standard to review an award of punitive damages violates the Fourteenth Amendment protection against deprivation of property without due process. *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432 (1994). The Supreme Court's due process concerns are specific to punitive damages, which serve a different purpose from compensatory damages. *See Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 422 F.3d 949, 953 (9th Cir. 2005) (reviewing relevant caselaw).

damages on both the battery on false arrest claims. The arrest and the use of force represented related but distinct noneconomic harms.

In arguing that the award of damages on the false arrest claim is excessive, Defendants rely on comparison to another case. Def. Mot. 9. They state, "Among published jury awards over the last five years, there was one jury verdict for noneconomic damages for an unlawful arrest, substantially less than the award in this case." *Id.* (citing *Edwin Yang v. Brookfield Prop. Reit*, No. 18CV51536). In *Yang*, the plaintiff was awarded $12,500 in compensatory damages and $50,000 in punitive damages on his battery claim; he was also awarded $12,500 in compensatory damages and $50,000 in punitive damages on his false arrest claim. EDWIN YANG v. BROOKFIELD PROPERTY REIT, INC. D/B/A PIONEER PLACE; UNIVERSAL PROTECTION SERVICE, LP D/B/A ALLIED UNIVERSAL SECURITY SERVICES, LP; AND DAVID WEGMAN, 20 Or. Lit. Arb. Rpts. 65. The plaintiff was at a mall riding a motorized skateboard when a security guard told him to stop; he complied, but the guard told him to leave. *Id.* When the plaintiff asked why, the guard told him he was trespassing, then grabbed the plaintiff's arm and forced him to the ground. *Id.* Another guard tackled him and restrained him, and he was handcuffed for about an hour sitting in a stairwell. *Id.* The plaintiff was awarded $445 in past medical costs and did not claim future medical expenses. *Id.*

Defendants correctly point out that Plaintiff was only handcuffed for about ten minutes, whereas the plaintiff in *Yang* was handcuffed for about an hour. Def. Mot. 9. They argue that Defendant Baker had a valid basis to investigate Plaintiff, that Plaintiff was uncooperative, and that Plaintiff was released as soon as Defendant Baker confirmed his identity and his right to be where he was. Def. Reply 2-3. They argue that in excluding the use of force during the arrest from consideration, the damages for false arrest included placing Plaintiff in the patrol car for ten

minutes. *Id.* at 3. Defendants argue that damages on the false arrest claim should be reduced to one dollar. *Id.* at 7.

The Court concludes that there is no basis to reduce the jury's award on Plaintiff's false arrest claim under Oregon law. There is evidence in the record supporting an award of damages for the emotional distress Plaintiff suffered when he was handcuffed and placed in the patrol car. Plaintiff testified that he felt fear, anger, and humiliation from his experience. The Court agrees with Defendants that the award is excessive under the federal standard.[3] But Oregon law does not permit a reduction of the jury's verdict because the Court believes the award is excessive. The Court cannot say that no evidence in the record supports the award. The Court therefore denies Defendants' motion for remittitur as to the damages award on the false arrest claim.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendants' Motion for a New Trial; Altering or Amending a Judgment [123]. Plaintiff is to notify the Court within fourteen days whether he will accept remittitur of the punitive damages award or if he requests a new trial on punitive damages.

IT IS SO ORDERED.

DATED: __February 22, 2024__ .

MARCO A. HERNÁNDEZ
United States District Judge

_____

[3] The jury's verdict on Plaintiff's excessive force claim covered the act of handcuffing Plaintiff because that was when force was used. The verdict on the false arrest claim covered the distinct harm of being placed in the patrol car for ten minutes while handcuffed. An award of $500,000 in noneconomic damages for that conduct is grossly excessive under the federal standard.